IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3045-FL

| | |
|---|---|
| WILLIE JAMES SCURLOCK, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| GERALD BRANKER; LESTER CARR, | ) |
| AMANDA DEMING, AARON | ) |
| HOWARD; TIMOTHY LEE, ELENA | ) |
| MCDANIEL, JASON BROWN, and | ) |
| NATHAN MCMILLAN, | ) |
| | ) |
| Defendants. | ) |

The matter is before the court on the motion for summary judgment (DE # 54) pursuant to Federal Rule of Civil Procedure 56 filed by defendants Gerald Branker ("Branker"), Lester Carr ("Carr"), Amanda Deming ("Deming"), Aaron Howard ("Howard"), Timothy Lee ("Lee"), Elena McDaniel ("McDaniel"), and Nathan McMillan ("McMillan"), to which plaintiff responded. Also before the court are plaintiff's motions to compel discovery (DE # 52 and 57), to which defendants responded. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' motion for summary judgment, and denies plaintiff's motions to compel.

**STATEMENT OF THE CASE**

On April 8, 2010, plaintiff filed this action *pro se* pursuant to 42 U.S.C. § 1983, alleging that the above-stated defendants, as well as defendant Jason Brown ("Brown"), used excessive force against him in violation of the Eighth Amendment to the United States Constitution. On November

1, 2010, plaintiff was notified of his failure to obtain service on Brown. Following efforts of the North Carolina Attorney General to provide an address for Brown that failed to result in perfection of service, the court dismissed plaintiff's action against Brown pursuant to Federal Rule of Civil Procedure 4(m).

On December 30, 2010, the court entered a case management order. Plaintiff subsequently filed two motions to compel discovery, arguing that defendants failed to completely respond to his interrogatories, requests for admissions, and his requests for production of documents. In response, defendants argue that they have asserted the affirmative defense of qualified immunity, and should not be subject to any further burdens of discovery.

Defendants filed a motion for summary judgment on May 12, 2011, arguing that plaintiff is not able to establish that they used excessive force against him in violation of the Eighth Amendment. Alternatively, defendants assert the defense of qualified immunity. In his response to defendants' motion for summary judgment, plaintiff additionally argued that defendants possess a video tape of the alleged use of force incident, but that it was not made part of the record. Accordingly, on February 17, 2012, the court directed defendants to submit to the court any video tape of the alleged use of force incident. Defendants responded to the court's order denying the existence of a video tape recording of the use of force incident at issue.

## STATEMENT OF THE FACTS

The undisputed facts are as follows. Plaintiff's allegations arise out of events that occurred on December 14, 2008, while he was incarcerated at Central Prison. On this date, Howard was passing out food trays on the west side of BC-1B cell block. Plaintiff, an inmate housed in cell BL-105, called Howard to his cell to complain that his food tray was dirty and to request another tray.

Plaintiff states that Howard rubbed some dirt off of his food tray with his finger and responded "ain't nothing wrong with this tray, are you refusing your food tray?" Compl. p. 12. Plaintiff responded that he was not refusing his food tray, but was requesting a clean tray. Howard then grabbed his tray, "making [plaintiff's] arm hit on the trap." Id. Plaintiff pulled his tray back toward his cell. Howard then pulled back on the food tray and was able to free the tray from plaintiff, but impacted plaintiff's cell door during the struggle. Howard Aff. ¶ 8. After the struggle, Howard attempted to close the food passage door, but plaintiff was holding it open with his hand. Id. Howard then sprayed one burst of O/C pepper spray striking plaintiff in the upper torso.[1] Id. ¶¶ 8-9. Plaintiff alternatively states that Howard sprayed the pepper spray into his face, and punched him through the food trap door. Brown and McMillian responded to the incident to assist Howard with closing and securing plaintiff's food passage door. After the food passage door was secure, Howard reported the incident to Unit Officer-In-Charge Carr.

At approximately 12:30, Brown and McMillian placed plaintiff in full restraints, and escorted him out of the cell block to be medically screened. Compl. p. 13. The officers asked plaintiff if he wished to be de-contaminated, and he responded in the affirmative. The parties' account of the events from this point forward differ. Plaintiff alleges that the officers took him to a janitor's closet to decontaminate. Once inside the closet, plaintiff informed the officers that he could not decontaminate wearing the same clothes he wore when he was sprayed with pepper spray. Id. Plaintiff states McMillian responded: "You know you done messed up? We going to get that ass." Id. p. 14. The officers then escorted plaintiff outside of the janitor's closet and into a hallway near the sergeant's office. Plaintiff told the officers that he was not scared and that he could not stop the

---

[1] Howard denies punching plaintiff through the food trap door.

3

officers if they wanted to jump him while he was in restraints. Id. In response, Brown directed the officers to "take him to the floor," and Howard pushed plaintiff to the floor. Mem. in Supp. of Pl's Resp. p. 22. Plaintiff hit his face as he fell to the floor. Id. Brown then punched him in the face, and plaintiff told him that he "hits like a bitch." Id. Plaintiff contends that the remaining defendants joined the assault and punched him in the face, neck, and head. Id. At some point, Brown directed defendants to take plaintiff back to the janitor's closet where the alleged beating continued. Id. After the assault, the officers took plaintiff to a holding cage on A-block, and then to the nursing station. Id.

Nurse Rosenheim examined plaintiff at approximately 12:40 p.m., and documented that he was being medically screened subsequent to the use of pepper spray. Leach Aff. ¶ 9 and Ex. A p. 11. Nurse Rosenheim noted that plaintiff was alert, oriented, and had no respiratory difficulties or visible injuries. Id. Nurse Rosenheim further noted that plaintiff denied any injury, except to his right temple. Id. Finally, plaintiff denied having any medical issues. Id.

Plaintiff's version of the facts describe a second physical assault which occurred when he was taken to Carr's office to write a statement. Compl. p. 15. Howard, Lee, Brown, Deming, McMillan, and McDaniel were present in Carr's office. Id. Once inside Carr's office, the officers pushed plaintiff over a table, jumped on him, and beat him with their fists and batons. Id. The officers forced plaintiff to the floor, causing two big lumps over his right eye. Id. Plaintiff further states that defendants beat him with their fists and batons on the side of his face, his neck, and his head. Id. Plaintiff also states that defendants "kick and stomp me all over my body." Compl. p. 8. Plaintiff again asserts that he was in full restraints during the alleged assault.

4

After the alleged second assault, plaintiff states defendants took him back to the nurse's station. Plaintiff arrived at the nurse's station for the second time at approximately 12:45 p.m., subsequent to a use of force incident. Id. ¶ 10. Leach Aff. ¶ 10 and Ex. A p. 11. Plaintiff states that Nurse Rosenheim did not want to see him and instructed the officers to take him out of the medical station. Despite plaintiff's statement, Nurse Rosenheim saw plaintiff and documented two small raised areas above plaintiff's right eyebrow, but noted that there was no bleeding or open wounds. Id. Plaintiff again was cleared for segregation lock-up. Id.

Defendants' version of the facts contends that only one use of force incident occurred after plaintiff was medically screened following the deployment of pepper spray. Defendants assert that the use of force incident occurred as they were escorting plaintiff from the nurse's station to Carr's office so that plaintiff could be advised of his rights and could write a witness statement. Defendants assert that on their way to Carr's office plaintiff became loud, stopped walking, and refused to comply with a direct order to resume walking. McMillian then observed plaintiff jerk away from Brown, so McMillian began to assist Brown in gaining control over plaintiff. When the struggle began, Lee came out of Carr's office to assist McMillian and Brown. The officers then took plaintiff to the ground to gain control over him. Defendants deny beating plaintiff. Defendants assert that they then took plaintiff to the nurse's station for a second time.

On December 15, 2008, while incarcerated at Central Prison, plaintiff submitted a sick call request and was examined by the nursing staff.[2] Id. ¶ 11 and Ex. A p. 40. Plaintiff complained that he had injuries to his head, face, and back as well as nausea. Id. However, no raised areas were

---

[2] Plaintiff states that he was taken to the hospital for treatment on December 15, 2008. Plaintiff's medical records, however, do not reflect a hospital visit on this date. Plaintiff has provided no evidence of a trip to the hospital.

5

noted. Id. Plaintiff was examined and provided a non-aspirin medication for his complaints of head pain, and was instructed to inform custody and medical staff if his symptoms persisted. Id. Plaintiff additionally made several sick call requests while confined at Central Prison, and complained of headaches on at least eight of those occasions. Id. ¶ 13.

On January 2, 2009, plaintiff was seen by medical staff for a use of force screening in connection with a grievance he filed regarding the incident. Id. ¶ 14; Compl. p. 16. Plaintiff informed medical staff that an officer hit him in the head with a baton. Leach Aff. ¶ 14 and Ex. A p. 10. Medical staff noted a small raised area above plaintiff's right eye at the brow level. Id. Medical staff noted no abnormalities and that plaintiff denied headaches on that date. Id. Finally, medical staff noted that there was no bruising or swelling on plaintiff's upper body above his waist and that he did not complain of injuries to his lower body. Id.

On January 27, 2009, plaintiff had an electromagnetic radiation (x-ray) test done of his facial area. Id. ¶ 15. The x-ray results showed no signs of a facial fracture. Id. Plaintiff alternatively states that as a result of the assault, he now requires glasses, suffers from painful migraines, and mental impairment.

**DISCUSSION**

A.  Motions to Compel

Plaintiff filed two motions to compel discovery, arguing that defendants have not adequately responded to his discovery requests. In response, defendants detail the discovery materials that they already have provided plaintiff. Defendants additionally argue that they have raised the affirmative defense of qualified immunity and are entitled to a resolution of the qualified immunity issue prior to being subject to the burden of additional discovery.

6

"Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 200 (2001), overruled on other grounds by, Pearson v. Callahan, 555 U.S. 223 (2009). Moreover, the defense of qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Id. (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)); Lescs v. Martinsburg Police Dep't, 2005 WL 1607771, 138 Fed. App'x. 562, 564 (4th Cir. 2005) (finding that the district court was required to rule on defendant's dispositive motion raising qualified immunity issues prior to allowing discovery). Because defendants' answer raises the defense of qualified immunity, they are entitled to resolution of the issue prior to being subject to the burdens of litigation, including discovery. Therefore, plaintiff's motions to compel are DENIED.

B.   Motion for Summary Judgment

   1.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must then affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

7

2.  Analysis

In support of their motion for summary judgment, defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. See Pearson, 129 S.Ct. at 821[3]; Siegert v. Gilley, 500 U.S. 226, 232 (1991); Rogers, 249 F.3d at 286.

a.  Video Footage

Plaintiff alleges that defendants possess video-taped footage of the December 14, 2008, use of force incident. On February 17, 2012, the court directed defendants to submit any video tape of the alleged excessive use of force incident. In response, defendants submitted an affidavit from Kenneth E. Lassiter, a former warden at Central Prison, stating that "no video recording of the use of force incident involving Plaintiff on 14 December 2008 exists." Lassiter Aff. ¶ 4. Plaintiff has not submitted any evidence to support the existence of a video tape of the incident, aside from his own conclusory allegations. Conclusory allegations are not sufficient to support a claim. White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (stating minimum level of factual support required). Accordingly, the court finds that there is no evidence to suggest that defendants possess a video tape of the use of force incident at issue in this action.

---

[3]In Pearson, the Supreme Court overruled the mandatory two-step sequence adopted in Saucier. See Pearson, 129 S. Ct. at 821.

b.   Excessive Force

The court first determines whether defendants violated plaintiff's constitutional rights. Plaintiff alleges that defendants used excessive force against him in violation of the Eighth Amendment. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 319 (1986). The excessive force inquiry has an objective prong and a subjective prong. Under the objective prong, plaintiff must establish that the "alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir. 1994), abrogated on other grounds by Wilkins v. Gaddy, __ U.S. __, 130 S.Ct. 1175 (Feb. 22, 2010). The objective component of an excessive force claim is not as demanding, however, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated[,] whether or not significant injury is evident." Wilkins, 130 S.Ct. at 1178 (internal quotation marks and ellipsis omitted).

To satisfy the subjective component, a claimant must show that a prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991). For an excessive force claim, the relevant state of mind is "wantonness in the infliction of pain." Whitley, 475 U.S. at 322. In determining whether a prison official has acted with "wantonness," a court should balance: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321; Hudson v. McMillian, 503 U.S. 1, 7 (1992).

9

Applying the factors set forth above, the record does not support plaintiff's excessive force claim. First, the court examines whether there was a need for force. Plaintiff acknowledges that he pulled his food tray through the food passage door in a struggle with Howard. Plaintiff further admits to, and was disciplined for, trying to push the food trap door back open. Branker Aff. ¶ 8 and Ex. 2. This action created a security risk for which the pepper spray was warranted. Although the parties dispute the nature and extent of the subsequent use of force, both versions of the incident involve plaintiff engaging in disruptive behavior while being transported from his cell. Again, disruptive behavior in a prison creates a security risk, which may warrant the use of force.

As for the second Whitley factor, the relatively minor injuries sustained by plaintiff belie the notion that defendants' conduct violated the Eighth Amendment. According to plaintiff's version of the facts, he was removed from his cell by Brown and McMillian at 12:30 p.m., taken to a janitor's closet for decontamination, decontaminated, assaulted, taken back to the janitor's closet, assaulted again, placed in A-block for holding, and then taken to the nurse's station. Plaintiff's medical records show that his first medical screening occurred at 12:40, at most ten (10) minutes from the time plaintiff states that he was removed from his cell. Plaintiff reported no injuries to the nurse at that time, except an injury to his right temple.[4] Plaintiff's second visit to the nurse's station occurred just five minutes later, at 12:45, after an alleged second physical assault. The only noted injury at this visit was two small raised areas above plaintiff's right eyebrow. A subsequent use of force examination reflected a raised area above his right eye, but no other abnormalities, bruising,

---

[4] The nurse's notes state that plaintiff's first visit to the nurse was due to the fact that pepper spray was used on plaintiff. Leach Aff., Ex. A p. 11. Accordingly, the evidence in the record contradicts that plaintiff was physically assaulted prior to his first visit to the nurse's station.

10

or swelling.[5]  Leach Aff. Ex. A p. 10.  Plaintiff informed Nurse Rosenheim he injured his head when it hit the concrete floor.  Mem. in Supp. of Pl's Resp. p. 45.  Thus, the proof respecting the extent of plaintiff's injuries as a result of defendants' use of force and the documented time line does not weigh in favor of establishing malicious and sadistic intent on the part of defendants.  Williams v. Scott, 433 F. App'x 801, 804 (11th Cir. 2011) (concluding that plaintiff's injuries, neck pain, and continuos headaches, were of a "modest variety" which "runs counter to a finding of malicious and sadistic intent.").

Based upon the *de minimis* nature of plaintiff's injuries, as well as the lack of evidentiary support for plaintiff's allegations regarding the assault, the court finds that the relationship between the need for force and the force used was proportionate.  To the extent that the allegations differ with regard to the alleged use of force incident, there is no evidence suggesting that defendants applied force in a malicious, wanton, or sadistic manner aside from plaintiff's conclusory allegations which are not sufficient to support a claim.  White, 886 F.2d at 723.  Rather, defendants' actions were reasonable considering the fact that plaintiff was acting in a disruptive manner and disobeyed direct orders from corrections officers.  Further, as a known disruptive inmate,[6] defendants had an interest in re-gaining control over plaintiff.  Finally, the court is mindful that assaulting a restrained inmate is repugnant to the conscience of mankind.  See Wilkins, 130 S.Ct. at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely

---

[5] In a grievance dated December 14, 2008, plaintiff stated that the alleged excessive force caused injuries to his neck, back, face, and head along with headaches. Compl. p. 11. Plaintiff also reported trouble with seeing, hearing, thinking, and talking. Id. Plaintiff also stated that he had "blood clogs" on his back, as well as substantial swelling on the side of his head. Id. Aside from the headaches, these injuries are unsubstantiated by plaintiff's medical records.

[6] On December 14, 2008, plaintiff had incurred more than one hundred twenty (120) infractions while confined in the North Carolina Department of Corrections custody. Branker Aff. ¶ 7 and Ex. D.

11

because he has the good fortune to escape without injury."); Bacchus v. Scarborough, No. 11-7254, 2012 WL 506561, *2 (4th Cir. Feb. 16, 2012); McMillian v. Wake County Sheriff's Dept., 399 F. App'x 824, 828 (4th Cir. Oct. 28, 2010); Campbell v. Smith, 406 F. App'x 741, 2010 WL 4127326, *2 (4th Cir. Oct. 21, 2010). The court, however, finds that this case is distinguishable in that the evidence in the record, particularly the medical evidence and a well-established time line of events solidly refutes plaintiff's contention that two extensive and brutal beatings occurred while he was restrained.

Based upon the foregoing, the court finds that plaintiff is not able to satisfy either the objective or subjective prongs of the Eighth Amendment test. Thus, plaintiff is unable to establish a constitutional violation, and defendants are entitled to qualified immunity for plaintiff's excessive force claim.

        c.     Respondeat Superior

Plaintiff's allegations against Branker are based upon a theory of supervisor liability. However, because the court has determined that Carr, Deming, Howard, Lee, and McDaniel did not violate his Eighth Amendment rights, Branker is entitled to summary judgment on plaintiff's supervisor liability claim.

        d.     Deliberate Indifference to Medical Care

Plaintiff generally alleges that he is not being given adequate medical care. Plaintiff, however, does not provide any factual support for this claim, aside from these conclusory allegations. White, 886 F.2d at 723. Additionally, the record contains evidence that plaintiff received significant medical care in response to his medical complaints. A disagreement between an inmate and a physician regarding the appropriate form of treatment, such as the one suggested

by plaintiff, does not state a claim for deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Thus, this claim is without merit.

C.  New Claims

Plaintiff raises a new claim in a declaration regarding his ability to practice his religion. Plaintiff, however, has not requested leave of court to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a), to include any new claim. Because plaintiff has not moved this court to amend his complaint pursuant to Rule 15(a) to include any new claim, the new claim is not properly before the court and is DISMISSED without prejudice. See United States v. Jones, 842 F.2d 1293, *1 (4th Cir. Mar. 9, 1988); Crump v. N.C. Dep't of Corr., No. 3:05CV325-02-MU, 2009 WL 2738459, *5 (W.D.N.C. Aug. 26, 2009).

**CONCLUSION**

For the foregoing reasons, plaintiff's motions to compel (DE # 52 and 57) are DENIED. Defendants' motion for summary judgment (DE # 54) is GRANTED. To the extent plaintiff is attempting to assert a new claim regarding his ability to practice his religion, it is DISMISSED without prejudice. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 12th day of March, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge